# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STANLEY ARNOLD,
an individual,

                                                      Case No.:

      Plaintiff,

v.

ARS NATIONAL SERVICES INC.,
a foreign for-profit corporation,
CAVALRY PORTFOLIO SERVICES, LLC,
a foreign limited liability company,
FIRSTSOURCE ADVANTAGE, LLC,
a foreign limited liability company,
MIDLAND CREDIT MANAGEMENT, INC.,
a foreign for-profit corporation,
VAN RU CREDIT CORPORATION,
a foreign for-profit corporation, and
TRANS UNION, LLC,
a foreign limited liability company,

      Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, STANLEY ARNOLD (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, ARS NATIONAL SERVICES INC. (hereinafter, "ARS"), CAVALRY PORTFOLIO SERVICES, LLC (hereinafter, "CPS"), FIRSTSOURCE ADVANTAGE, LLC (hereinafter, "FSA"), MIDLAND CREDIT MANAGEMENT, INC. (hereinafter, "MCM"), VAN RU CREDIT CORPORATION (hereinafter, "VRC"), and TRANS UNION, LLC (hereinafter, "TransUnion") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein ARS, CPS, FSA, MCM, and VRC requested and obtained Plaintiff's Trans Union consumer credit report without a lawful permissible purpose, and for TransUnion's willful disclosure of Plaintiff's TransUnion credit report without observing reasonable procedures to limit the publication of Plaintiff's report to users with permissible purposes.

## JURISDICTION, VENUE & PARTIES

2.     Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the FCRA, 15 United States Code, Section 1681, *et seq.*

3.     Defendants are subject to the jurisdiction of this Court as ARS, CPS, FSA, MCM, VRC, and TransUnion each regularly transact business in this District and the events described herein occurred in this District.

4.     Venue is proper in this District as the acts and transactions described herein occurred in this District.

5.     At all material times herein, Plaintiff is a natural person residing in Hernando County, Florida.

6.     At all material times herein, ARS is a foreign for-profit corporation existing under the laws of the state of California with its principal place of business located at 201 W. Grand Avenue, Escondido, California 92025.

7.     At all material times herein, CPS is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 500 Summit Lake Drive, Suite 400, Valhalla, New York 10595.

8.      At all material times herein, FSA is a foreign limited liability company existing under the laws of the state of New York with its principal place of business located at 205 Bryant Woods South, Amherst, New York 14228.

9.      At all material times herein, MCM is a foreign for-profit corporation existing under the laws of the state of Kansas with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, California 92108.

10.     At all material times herein, VRC is a foreign for-profit corporation existing under the laws of the state of Illinois with its principal place of business located at 4839 N. Elston Avenue, Chicago, Illinois 60630.

11.     At all material times herein, TransUnion is a limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

12.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 U.S.C., Section 1681(b).

13.     The FCRA limits access to a consumer's credit report for certain limited permissible purposes.  *See* 15 United States Code, Section 1681b(a).

14.     Under the FCRA, a person shall not use or obtain a consumer report for any purpose unless the consumer report is obtained for a purpose for which the consumer report is authorized

to be furnished under the FCRA, and the purpose is certified in accordance with the FCRA, Section 1681e. *See* 15 U.S.C., Section 1681b(f).

15.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer, is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; statutory damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorneys' fees. *See* 15 U.S.C., Section 1681b(n).

16.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer, is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorney's fees. *See* 15 U.S.C., Section 1681b(o).

## <u>GENERAL ALLEGATIONS</u>

17.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, 15 United States Code, Section 1681a(c).

18.     At all material times herein, ARS, CPS, FSA, MCM, and VRC are each a "person" as defined by the FCRA, 15 United States Code, Section 1681a(b).

19.     At all material times herein, ARS, CPS, FSA, MCM, and VRC each attempt to collect consumer debts previously discharged in Plaintiff's Voluntary Chapter 7 bankruptcy case (hereinafter collectively, the "Discharged Debt").

20.     At all material times herein, the Discharged Debt is a consumer debt, obligations resulting from transactions for goods or services incurred primarily for personal, household, or

family use.

21.     At all material times herein, the Discharge Order and Order Confirming Discharge, as such terms are defined below and used herein, eliminated any personal liability with respect to the Discharged Debt.

22.     After Plaintiff received the Discharge Order and Order Confirming Discharge in his Chapter 7 Bankruptcy Case, as such term is defined below and used herein, Plaintiff did not personally owe ARS a balance due on the Discharged Debt.

23.     After Plaintiff received the Discharge Order and Order Confirming Discharge in his Chapter 7 Bankruptcy Case, Plaintiff did not personally owe CPS a balance due on the Discharged Debt.

24.     After Plaintiff received the Discharge Order and Order Confirming Discharge in his Chapter 7 Bankruptcy Case, Plaintiff did not personally owe FSA a balance due on the Discharged Debt.

25.     After Plaintiff received the Discharge Order and Order Confirming Discharge in his Chapter 7 Bankruptcy Case, Plaintiff did not personally owe MCM a balance due on the Discharged Debt.

26.     After Plaintiff received the Discharge Order and Order Confirming Discharge in his Chapter 7 Bankruptcy Case, Plaintiff did not personally owe VRC a balance due on the Discharged Debt.

27.     At all material times herein, ARS, CPS, FSA, MCM, and VRC each knowingly accessed Plaintiff's personal and highly sensitive information by accessing his TransUnion consumer credit report without a lawful permissible purpose.

28.     At all material times herein, TransUnion is a "consumer reporting agency" as

defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  TransUnion disburses such consumer reports to third parties under contract for monetary compensation.

29.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

30.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## FACTUAL ALLEGATIONS

31.     On or about August 20, 2014, Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A., d/b/a LeavenLaw (hereinafter, "Undersigned Counsel") with respect to his debts generally, including the Discharged Debt.

32.     On or about December 12, 2014, Plaintiff filed a Chapter 7 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, referenced by case number 8:14-bk-14414-MGW (hereinafter, "Bankruptcy Case").  Please see a true and correct copy of Plaintiff's Bankruptcy Case Petition labeled as Exhibit "A."

33.     Plaintiff voluntarily filed the Bankruptcy Case through his agent, Undersigned Counsel, and Undersigned Counsel acted within the scope of its agency when it filed the immediately-aforementioned Bankruptcy Case.

34.     Plaintiff listed one hundred two (102) unsecured debt obligations in his *Voluntary Chapter 7 Bankruptcy Petition*, including the Discharged Debt.  *See generally* Ex. A.

35.     Plaintiff declared under penalty of perjury that the information provided in his

Chapter 7 Voluntary Bankruptcy Petition was true and correct, and Plaintiff requested relief in accordance with the bankruptcy code.

36.     On or about December 17, 2014, Clerk of the Bankruptcy Court, Joseph Speetjens, declared under penalty of perjury that he sent notice of Plaintiff's Bankruptcy Case via the *Notice of Commencement of Case, Section 341 Meeting of Creditors, and Fixing Deadlines* (hereinafter, "341 Notice") to the creditors listed in Plaintiff's Bankruptcy Case Petition.  Please see a true and correct copy of said 341 Notice and corresponding BNC mailing certificate labeled as Exhibit "B."

37.     On or about March 23, 2015, Plaintiff received a *Discharge of Debtor* Order in his Bankruptcy Case which eliminated any remaining personal obligation with respect to the Discharged Debt.

38.     On or about March 25, 2015, Clerk of the Bankruptcy Court, Joseph Speetjens, declared under penalty of perjury that he sent a copy of the *Discharge of Debtor* Order (hereinafter, the "Discharge Order") to the creditors listed in Plaintiff's Bankruptcy Case Petition.  Please see a true and correct copy of said Discharge Order and corresponding BNC mailing certificate labeled as Exhibit "C."

39.     After Plaintiff received the Discharge Order, Plaintiff was not legally obligated to pay the Discharged Debt, and Plaintiff did not otherwise subsequently initiate a business, credit, or transactional relationship with ARS, CPS, FSA, MCM, or VRC.

40.     On or about June 9, 2015, Plaintiff reopened his Bankruptcy Case in an attempt to convert his Bankruptcy Case from a voluntary chapter 7 bankruptcy to a voluntary chapter 13 bankruptcy, and the Bankruptcy Court entered an order re-opening Plaintiff's Bankruptcy Case on June 17, 2015.  Please see attached a true and correct copy of the Motion to Re-Open Chapter 7 Case and Order Granting Motion to Re-Open Chapter 7 Case labeled as Composite Exhibit "D."

41.     On or about October 22, 2015, the Bankruptcy Court entered an *Order Granting Motion to Dismiss Case*, which dismissed Plaintiff's Chapter 13 Bankruptcy Case.  Please see a true and correct copy of the *Order Granting Motion to Dismiss Case* labeled as Exhibit "E."

42.     On or about November 9, 2015, Plaintiff filed a *Motion to Confirm Chapter 7 Discharge Remains in Effect* in his Bankruptcy Case as he did not re-open his Bankruptcy Case for the purposes of including any unsecured debts previously discharged by the initial *Discharge Order*.  Please see a true and correct copy of Plaintiff's *Motion to Confirm Chapter 7 Discharge Remains in Effect* labeled as Exhibit "F."

43.     On or about January 21, 2016, the Bankruptcy Court entered an *Order Granting Plaintiff's Motion to Confirm Chapter 7 Discharge Remains in Effect* (hereinafter, "Order Confirming Discharge"), and Clerk of the Bankruptcy Court, Joseph Speetjens, declared under penalty of perjury that he sent a copy of the Order Confirming Discharge to the creditors listed in Plaintiff's Bankruptcy Petition.  Please see a true and correct copy of said Order Confirming Discharge and enclosed mailing matrix labeled as Exhibit "G."

44.     The Order Confirming Discharge affirmed that the initial Discharge Order eliminated any personal liability with respect to the Discharged Debt.

45.     Prior to entering the Order Confirming Discharge, the Bankruptcy Court neither voided Plaintiff's initial *Discharge Order* nor ever indicated that the *Discharge Order* was ineffective or inoperative.

46.     On or about October 20, 2016, Plaintiff obtained a copy of his TransUnion credit report.  Please see attached a true and correct copy of the relevant pages from said credit report labeled as Exhibit "H."

47.     After the Discharge Order and Order Confirming Discharge eliminated any

personal obligation with respect to the Discharged Debt, ARS, CPS, FSA, MCM, and VRC each accessed Plaintiff's personal TransUnion credit report without a lawful or permissible purpose.

48.     Specifically, ARS, CPS, FSA, MCM, and VRC accessed Plaintiff's TransUnion report on the following dates:

      a.   ARS accessed Plaintiff's TransUnion report on January 5, 2016;

      b.   VRC accessed Plaintiff's TransUnion report on August 19, 2016;

      c.   MCM accessed Plaintiff's TransUnion report on September 18, 2016;

      d.   FSA accessed Plaintiff's TransUnion report on October 13, 2016; and

      e.   CPS accessed Plaintiff's TransUnion report on October 17, 2016.

49.     ARS, CPS, FSA, MCM, and VRC did not possess a permissible or authorized purpose for accessing Plaintiff's personal consumer credit report, and such conduct constitutes a knowing and willful decision to access Plaintiff's personal consumer credit reports without a permissible purpose or under false pretenses.

50.     ARS's, CPS's, FSA's, MCM's, and VRC's actions violated Plaintiff's privacy as each gained access to Plaintiff's highly sensitive and personal information without a permissible purpose.

51.     In today's age of digital piracy, the safekeeping of one's personal and sensitive information—such as addresses, telephone numbers, account numbers, and social security numbers—are of paramount importance.

52.     ARS's, CPS's, FSA's, MCM's, and VRC's access to such highly sensitive and personal information increases the risk of identity theft and is the exact type of harm the FCRA is designed to protect.

53.     Furthermore, TransUnion maintains public record information concerning Plaintiff including information regarding Plaintiff's Bankruptcy Case.  *See* Ex. G at pg. 1.

54.     Specifically, TransUnion sought out and affirmatively reported Plaintiff's Bankruptcy Case in the public records section of his TransUnion report as "CHAPTER 13 BANKRUPTCY DISMISSED," but TransUnion failed to report the Discharge Order or Order Confirming Discharge that Plaintiff received through his Bankruptcy Case.  *Id.*

55.     Such incomplete and misleading characterization of Plaintiff's Bankruptcy Case resulted in TransUnion knowingly and recklessly furnishing Plaintiff's consumer report to ARS, CPS, FSA, MCM, and VRU despite TransUnion possessing reasonable belief that the consumer reports will not be used for a permissible purpose pursuant to Section 1681b of the FCRA.

56.     Plaintiff has retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

57.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000 in statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

58.     As a result of ARS's, CPS's, FSA's, MCM's, and VRC's conduct, Plaintiff did not receive the benefit of relief afforded by the Discharge Order and Order Confirming Discharge entered in Plaintiff's Bankruptcy Case.  Plaintiff has essentially been robbed of his "fresh start."

59.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that despite the Discharge Order and Order Confirming Discharge entered in Plaintiff's Bankruptcy Case, and despite Plaintiff's dispute efforts, Plaintiff must endure repeated violations of his privacy in

conjunction with Defendants' efforts to collect the Discharged Debt.

60.     As of the date of this complaint, no Defendant has initiated a law suit in an effort to collect the Discharged Debt.  Likewise, no Defendant obtained a final judgment regarding the Discharged Debt.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681b(f)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

61.     ARS, CPS, FSA, MCM, and VRC are each subject to, and each violated the provisions of, 15 United States Code, Section 1681b(f) by using or obtaining Plaintiff's consumer credit reports without possessing a purpose authorized by the FCRA, 15 United States Code, Section 1681b(a).

62.     Specifically, Section 1681b(a) limits access to a consumer's credit reports for certain limited permissible purposes.

63.     ARS, CPS, FSA, MCM, and VRC did not possess a permissible or authorized purpose for accessing Plaintiff's personal consumer credit reports—which contained highly sensitive and personal information—as the Discharged Order and Order Confirming Discharge eliminated Plaintiff's personal legal obligation with respect to the Discharge Debt.

64.     Moreover, after receiving the Discharge Order and Order Confirming Discharge, Plaintiff did not otherwise enter into a business, credit, or transactional relationship with ARS, CPS, FSA, MCM, or VRC.

65.     Despite the Discharge Order and Order Confirming Discharge eliminating Plaintiff's personal legal obligation with respect to the Discharged Debt, ARS, CPS, FSA, MCM, and VRC each accessed Plaintiff's TransUnion consumer credit report *at least* once.

66.     ARS's, CPS's, FSA's, MCM's, and VRC's conduct constitutes a knowing and willful decision to access Plaintiff's personal consumer credit report without a permissible purpose or under false pretenses.

67.     In today's age of digital piracy, the safekeeping of one's personal and sensitive information—such as addresses, telephone numbers, account numbers, and social security numbers—are of paramount importance.

68.     Defendants' access to such highly sensitive and personal information increases the risk of identity theft and is the exact type of harm the FCRA is designed to protect.

69.     ARS's, CPS's, FSA's, MCM's, and VRC's violation of 15 United States Code, Section 1681b(f), constitutes negligent, or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, and attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, 1681o, or both.

### COUNT TWO:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(a)

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

70.     TransUnion is subject to, and violated the provisions of, 15 United States Code, Section 1681e(a), by failing to establish or maintain reasonable procedures to limit the furnishing of consumer reports to the permissible purposes listed under Section 1681b of the FCRA, including that prospective users: (a) identify themselves; (b) certify the purposes for which the information

is sought; and (c) certify that the information will be used for a permissible purposes, by failing to make a reasonable effort to verify the identity of a user prior to furnishing a consumer report, and by furnishing a consumer report despite possessing reasonable grounds for believing that the consumer report will not be used for a permissible purpose pursuant to Section 1681b.

71.     Specifically, the Discharge Order and Order Confirming Discharge eliminated Plaintiff's personal legal obligation with respect to the Discharged Debt.

72.     Furthermore, TransUnion maintains public record information concerning Plaintiff, including information regarding Plaintiff's Bankruptcy Case.  *See* Ex. G at pg. 1.

73.     Specifically, TransUnion reported Plaintiff's Bankruptcy Case in the public records section of his TransUnion report as "CHAPTER 13 BANKRUPTCY DISMISSED," but TransUnion failed to report the Discharge Order or Order Confirming Discharge that Plaintiff received through his Bankruptcy Case.  *Id.*  Such accurate information was in the public domain, the same public domain that TransUnion accessed to gather and publish incomplete information about it.

74.     Such incomplete and misleading characterization of Plaintiff's Bankruptcy Case resulted in TransUnion furnishing Plaintiff's consumer report to ARS, CPS, FSA, MCM, and VRU despite TransUnion possessing reasonable grounds for believing that the consumer reports will not be used for a permissible purpose pursuant to Section 1681b.

75.     Namely, TransUnion possessed reasonable grounds for believing that any purported Debt owed to ARS, CPS, FSA, MCM, or VRU—all debt collectors pursuant to the FDCPA—was previously discharged through Plaintiff's Bankruptcy Case as TransUnion readily accesses public bankruptcy record information concerning individual consumers, and TransUnion

furnished a copy of Plaintiff's credit report to each third-party debt collector Defendant within ten (10) months of Plaintiff receiving the Order Confirming Discharge in his Bankruptcy Case.

76.     Such publication of Plaintiff's reports evidences TransUnion's willful decision to furnish Plaintiff's personal consumer credit report despite TransUnion possessing reasonable grounds for believing that the report would not be used for a lawful, permissible purpose.  Stated further and differently, it is patently unreasonable for TransUnion to believe so many delinquent accounts all could have arisen and gone into default in such a short amount of time after Plaintiff's Discharge Order was entered.

77.     As a result of TransUnion's conduct, actions, and inactions, Plaintiff personal and highly sensitive financial information was furnished, published, and disclosed to parties without a lawful or permissible purpose, specifically, ARS, CPS, FSA, MCM, and VRC in violation of the FCRA and Plaintiff's personal privacy.

78.     TransUnion's conduct was a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

79.     TransUnion's violations of 15 United States Code, Section 1681e(a), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.     Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b.      Judgment enjoining Defendants from engaging in further conduct in violation of the FCRA;

c.      Actual damages in an amount to be determined at trial;

d.      Compensatory damages in an amount to be determined at trial;

e.      Punitive damages in an amount to be determined at trial;

f.      An award of attorneys' fees and costs; and

g.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

LEAVENLAW

/s/ *Sean E. McEleney*
□ **Ian R. Leavengood, Esq., FBN 0010167**
□ **Gregory H. Lercher, Esq., FBN 0106991**
[X] **Sean E. McEleney, Esq. FBN 0125561**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
glercher@leavenlaw.com
smceleney@leavenlaw.com
*Attorneys for Plaintiff*